UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| WISSAM HAMMOUD,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA and<br>FCI SHERIDAN WARDEN MARION<br>FEATHER,<br><br>    Respondent. | 3: 13-cv-01340-JO<br><br><br><br><br><br>OPINION AND ORDER |

Wissam Hammoud
Fed. Reg. No. 39876-018
Federal Correctional Institution
P.O. Box 1000
Talladega, AL   35160

    Petitioner Pro Se

S. Amanda Marshall
United States Attorney
Natalie Wight
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Respondent

1 - OPINION AND ORDER

JONES, District Judge.

Petitioner, an inmate at FCI-Talladega, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 *pro se*. Petitioner alleges his constitutional rights were violated when the Disciplinary Hearings Officer (DHO) found him guilty of assaulting a corrections officer without due process. For the reasons set forth below, his Amended Petition [12] should be DENIED with prejudice.

## PROCEDURAL BACKGROUND

As noted above, petitioner is currently incarcerated at FCI-Talladega, Alabama. At the time he filed this action and the time of the incident and subsequent disciplinary proceedings at issue, he was housed at FCI-Sheridan, Oregon. Petitioner's disciplinary conviction resulted in the loss of good time credit and time (suspended) in disciplinary segregation. Petitioner is currently serving a 258-month sentence for retaliating against a witness, solicitation of murder, use of a firearm during a crime of violence, possession of a firearm by a convicted felon and violation of parole. His projected release date is December 18, 2022, via good conduct release.

## FACTUAL BACKGROUND

On October 30, 2012, an officer observed petitioner moving the "wrong way" in the flow of inmate foot traffic and ordered him to stop and return to medical. At some point, petitioner walked

2 - OPINION AND ORDER

away from the officer and was again ordered to stop. Eventually, the officer directed petitioner to turn over his identification card. According to the officer, petitioner "pulled his ID card from his coat pocket and forcedly slapped it into [the officer's] left hand." Decl. of Daniel Cortez [21], Attachment 3, p. 17. The officer issued an incident report charging petitioner with assaulting any person and refusing to obey and order.

On November 8, 2012, the Bureau of Prisons (BOP) delivered a copy of the incident report to petitioner and advised him of his rights. *Id.*, Attachment 3, pp. 6-7. Petitioner maintained that after being stopped by the officer he asked to talk to a lieutenant, and, not getting an answer, petitioner started to walk toward the lieutenants office. Petitioner stated that the officer then began to yell at him to go back to medical. Petitioner denied that he forcibly slapped his ID into the officer's hand, but admitted that he was upset when he gave it to him. *Id.* On November 13, 2012, the Unit Disciplinary Committee (UDC) considered petitioner's incident report and referred it to the DHO. Petitioner again denied that he was forceful when he gave his ID to the officer, but stated that he was emotional. *Id.*, Attachment 3, p. 3.

On November 20, 2012, the DHO conducted a disciplinary hearing. Petitioner requested a staff representative and Staff Psychologist Dr. G. Paape appeared on his behalf. Previously, on

3 - OPINION AND ORDER

November 13, 2012, staff presented petitioner with written notice of his rights at his upcoming disciplinary hearing, including his right to call witnesses and present documentary evidence in his defense. Petitioner signed a form "Notice of Discipline Hearing Before the (DHO)" wherein he indicated that he did not wish to call witnesses at his upcoming hearing. *Id.*, Attachment 3, p. 10. According to the DHO, petitioner made the following statement at the hearing:

> My history speaks for itself. I've never had any assaults in my record. I'm scared because of staff. I just seen Dr. Paape and the psychiatrist and was emotional. We had discussed several issues of my past. They [sic] were other inmates moving around. I was being harassed by that officer. He asked me to stop which I did. He told me to go back to medical. I asked to speak with a Lieutenant and he yelled at me to go to medical. I started walking toward the Lieutenant's Office, he yelled at me to stop and give him my ID. I didn't think I sl[a]pt it into his hand or did it forcefully.

*Id.*, Attachment 3, pp. 1-2.[1]

Ultimately, the DHO found petitioner committed the prohibited act of assaulting any person in violation of Code 224. The DHO based his findings on the reporting officer's statement, memoranda submitted by Lieutenant Cape and Senior Officer Bell (each respectively asserting that he witnessed petitioner "aggressively

---

[1] Notwithstanding petitioner's assertion in this proceeding that a video was available at the time of his disciplinary hearing that would have exonerated him on the assault charge, there is no mention in the detailed DHO report of petitioner having ever requested review of a video of the incident or to the fact that numerous staff denied the existence of any such video footage when petitioner asked them to obtain and preserve it.

4 - OPINION AND ORDER

slap his ID into Officer Mulrooney's hand" and "slap[] his card into officer mulrooneys hand very forcibly"), Health Services Clinical Encounter forms for petitioner, Staff Injury Assessment and Follow-Up Form for Officer Mulrooney, and Petitioner's own statements to the investigator, the UDC, and the DHO. The DHO sanctioned petitioner to 21 days good conduct loss for the violation. He also suspended 30 days of disciplinary segregation pending 180 days of clear conduct.

## DISCUSSION

To obtain relief under § 2241, petitioner must establish that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(b)(3). In the instant case petitioner is seeking relief with respect to a disciplinary proceeding that, in part, resulted in the loss of good time credit while incarcerated at FCI-Sheridan. This is a challenge to the legality of the manner in which his sentence is being executed and is properly before the Court under 28 U.S.C. § 2241.

I.  **Procedural Due Process - Disciplinary Hearing and Proceedings**

It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be

5 - OPINION AND ORDER

afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Id.* at 563-67.

In this case, petitioner maintains that prison officials denied him the right to present documentary evidence in his defense at his disciplinary hearing, namely: to present the videotape or a report summarizing the videotape of the incident which petitioner states would have proved he did not assault the officer. According to petitioner, "[w]hile in the SHU [he] asked the Captain, Warden, Lt. Wade the investigation Lieutenant, and several other Lieutenants to review the video film in order to see the actual incident, but all kept insisting that the[re] was NO cameras in the area, and NO film is available." Amended Petition [12] at 2. Petitioner contends that video footage of the incident was provided to the F.B.I. as part of a potential prosecution. *Id.* He further argues that because the DHO did not have the video or a report summarizing the video before him, his written decision detailing

6 - OPINION AND ORDER

the evidence relied on to conclude petitioner committed the assault was incomplete and also violated petitioner's right to due process.

While conceding that due process could require the DHO to consider video evidence on petitioner's request, respondent denies petitioner's assertion that he ever asked the DHO to review the video and to take it or a summary report of it into consideration. According to respondent, the record supports only the conclusion that petitioner did not specifically request that the DHO consider video evidence. According to respondent, the DHO packet reveals that petitioner did not "request review of video surveillance during the investigation of the incident report, during UDC review, or during the disciplinary hearing." Moreover, the presiding DHO, Daniel Cortez, specifically avers that petitioner was given the opportunity to request witnesses and present documentary evidence during his disciplinary hearing and declined to do so. Moreover, Cortez states that "[t]o the best of my knowledge, inmate Hammoud did not request a review of video surveillance of the incident." Decl. of Daniel Cortez [21], p. 4.

The Court has carefully reviewed the record in this case. Beyond petitioner's assertions in his Amended Petition, it can find no reference to his having made a request that officers, investigators, witnesses and/or the DHO review video evidence of

7 - OPINION AND ORDER

the subject incident.[2]  As such, the facts in *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813-14 (10th Circuit 2007), a case relied on by petitioner here, actually serves to underscore the reason he cannot prevail on his claim that his disciplinary hearing violated his right to procedural due process.  In *Howard*, the court noted that,

> [a]lthough the record does not provide conclusive proof that Howard requested production of the tape at the DHO hearing, **it provides strong inferential support that he did so.**  (See Rec. Doc. 1 ex. G (Administrative Remedy Response dated 11/01/02)(noting Howard's contention that he was denied review of the videotape); Rec. Doc. 13 at 2 (finding, the district court below, that Howard did request the tape of the hearing).)

*Id.* at 814 (emphasis added).  In contrast here, there is no indication in the record, prior to his assertions in this federal habeas corpus proceeding, that petitioner requested a review of video surveillance of the incident.  Despite his current representation that he asked multiple staff members, including investigators, to recover and review a tape of the incident, and that these individuals all denied the existence of any such tape, the disciplinary hearing record is void of any mention of video surveillance of the assault incident.  Given petitioner's current

---

[2] According to petitioner, he asked Dr. Paape to review the video and discuss it with staff before the hearing, but Dr. Paape was not permitted to do so. Amended Petition [12] at 2. Dr. Paape did not mention any such denial in his remarks to the DHO. Moreover, petitioner indicated at the hearing that he was ready to proceed and satisfied with Dr. Paape's assistance. Decl. of Daniel Cortez [21], Attachment 3, p. 1.

8 - OPINION AND ORDER

assertion that he knew the video would affirmatively prove his innocence on the assault charge, the Court would expect there to be some record of what he maintains were repeated requests from multiple parties, including Dr. Paape, his staff representative, for the video surveillance. Accordingly, the Court concludes that petitioner cannot establish that he sought to introduce video evidence at his DHO hearing such that his procedural due process rights were violated by the DHO's alleged refusal to allow and consider this evidence in his resolution of the assault charge.

Moreover, respondent indicates that BOP staff did review and preserve all available footage surrounding this incident in the course of its use of force investigation[3], but found no video footage documenting the manner in which petitioner surrendered his ID to the officer. *See* Decl. of Damon Sayers [22], p. 3 ("On or about October 30, 2012, the SIS Department conducted a search for video surveillance of the metal shack where the use of force by staff occurred. Video footage of the metal shack was found and preserved. The video surveillance shows the verbal exchange between Officer Mulrooney and inmate Hammoud inside the metal shack. However, inmate Hammoud walked out of the metal shack, and out of view of the video cameras, into the area where he was

---

[3] Following the ID transfer, petitioner was immediately placed against a window and cuffed. He suffered a minor lip abrasion during this use of force. His injury was photographed and his subsequent medical assessment and the staff debrief of the use of force occurrence were videotaped.

9 - OPINION AND ORDER

reported and witnessed to have slapped his ID card into Officer Mulrooney's hand."). Accordingly, the Court is satisfied that any failure of the DHO to review video footage during the disciplinary proceedings was harmless because the critical event pertaining to the assault, *i.e.*, the manner in which petitioner transferred his ID into the officer's hand, was never captured by video surveillance.

## II. Substantive Due Process - Disciplinary Hearing and Proceedings

Once the aforementioned *Wolff* procedural protections are followed, the only function of the federal court is to review the statement of evidence upon which the disciplinary committee relied on in its findings to determine if the decision is supported by "some evidence." *Superintendent v. Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1984)("The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.").

Petitioner faults the DHO for, among other things, failing to turn over certain evidence for his staff representative's review, for finding that staff had nothing to gain by issuing a false report, and for failing to review the video of the incident. These arguments notwithstanding, it is clear that the eye witness accounts set out in Officer Mulrooney's written statement and Lt. Cape and Senior Officer Bell's memoranda, constitute some evidence supporting the DHO's finding that petitioner committed the alleged

10 - OPINION AND ORDER

assault. Accordingly, petitioner cannot demonstrate that the DHO, in concluding petitioner committed the assault, violated his substantive due process rights during his disciplinary proceedings.

## CONCLUSION

Based on the foregoing, the Amended Petition for Writ of Habeas Corpus [12] is DENIED, and judgment be entered DISMISSING this case with prejudice.

This case arises under 28 U.S.C. § 2241, and does not attack State court detention. Accordingly, no ruling on a certificate of appealability is required, and no recommendation thereon will be offered.

DATED this 8th day of August, 2014.

Robert E. Jones
United States District Judge

11 - OPINION AND ORDER